UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CARLOS GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:11-CV-1226 |
| | ) | |
| TERRY DANIEL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Terry Daniel's Motion for Summary

Judgment (Dkt. No. 99) based on the applicability of qualified immunity. Plaintiff opposed

Defendant's Motion and an oral hearing was held before the Court on October 19, 2012. For the

reasons stated in open Court, for good cause shown, and for the reasons contained herein,

Defendant Terry Daniel's Motion for Summary Judgment is DENIED.

### I.      Factual Background

In the early morning hours of November 15, 2009, Mr. Garcia ("Plaintiff") and several

members of his family and friends departed a birthday celebration at a Loudoun County

restaurant. Mr. Garcia and others in his party began to pile into a taxi cab when a Loudoun

County Sheriff stopped the vehicle and instructed the Garcia family to exit the taxi because it

contained too many occupants. The Garcias complied with the officer, but a short time later a

confrontation began between approximately two members of the Garcia party and two police

officers, although Plaintiff was not directly involved.

For the purposes of the Court's inquiry into Deputy Sheriff Terry Daniel's claim of

qualified immunity, the relevant facts are those that were known to Defendant at the time of the

incident. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Deputy Sheriff Daniel learned about the ongoing confrontation between the Mr. Garcia's friends and the police officers when a call for assistance went out from the officer on the scene, Ray Sullivan. Defendant immediately drove towards the incident and claims that he heard rustling over the radio, which he took as evidence of an ongoing physical struggle. Upon arriving at the scene, Defendant witnessed two officers actively struggling with two female members of the Garcia party. He also observed Mr. Garcia standing directly in front of Officer Ray Sullivan with his 85-pound German Shepherd, Bronco, by his side.

From the time Defendant arrived on the scene until the conclusion of the events in question, the camera mounted on Defendant's police vehicle's dashboard recorded each of the parties' movements. The recording offers the best evidence of what occurred at the scene during the moments before and immediately after Defendant struck Plaintiff in the head. The video clearly shows Plaintiff standing in front of Officer Sullivan and his K-9 with his hands raised near his head. The struggle between the deputies and members of the Garcia party is not clearly visible on the recording.

Immediately upon arriving on the scene, Defendant claims that he saw Plaintiff take one step towards Officer Sullivan and his dog and that he also heard Officer Sullivan say something to the effect of "He's got to go." The video from Defendant's dashboard camera shows something entirely different. Mr. Garcia made little movement, but for a step he took to the side and not towards Officer Sullivan or into his "safe distance," as Defendant claims. The video also shows that Officer Sullivan's police dog remained calmly at his side. At no point in the video does Mr. Garcia appear to threaten or endanger Officer Sullivan or the other officers at the scene.

2

Once Defendant parked his car at the scene, he quickly jumped out of his police vehicle and charged directly towards Mr. Garcia and Officer Sullivan. Without verbal warning, Defendant delivered an elbow strike to the back-right side of Mr. Garcia's head while at a full sprint. Mr. Garcia appeared to have been knocked unconscious and struck the ground with the full force of his weight. Another officer in the immediate vicinity arrived at Mr. Garcia a brief moment later and Defendant and the officer handcuffed Mr. Garcia while he lay face down on the ground.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of showing the court the basis for its motion and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party has the burden of showing, by means of affidavits or other verified evidence, that there exists a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see also Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) ("[T]o avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a *genuine* issue of material fact for trial.") (emphasis in original). A dispute of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party. . . ." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson*, 477 U.S. at 255).

### III.   Qualified Immunity

Qualified immunity is immunity from suit rather than merely a defense to liability. *Pearson v. Callahan*, 129 S.Ct. 808 (2009). This Court has determined that "qualified immunity shields government officials performing discretionary functions from civil liability insofar as their conduct 'does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known.'" *See Johnson v. Garraghty*, 57 F. Supp. 321, 329 (E.D. Va. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)). If qualified immunity attaches to Defendant, therefore, this Court must grant Defendant's Motion for Summary Judgment.

In determining whether or not to apply qualified immunity in a §1983 suit, courts look to the two-prong test set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier*, the court must decide (1) whether facts alleged or shown by Plaintiff make out a violation of the constitutional right; and, (2) if so, whether that right was clearly established at the time of defendant's alleged misconduct. [1] *Id.* Under the first prong, if the answer is, "no, the officer's conduct did not violate the person's Constitutional rights," then the inquiry ends and qualified immunity bars the litigation from proceeding. When the first prong is satisfied, then the inquiry turns to the second prong. Under the second prong of *Saucier*, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

---

[1] Trial courts now have the discretion to take the two prongs in whatever order is best suited for the inquiry at hand. *Pearson* at 233.

IV.    **Analysis**

Under *Saucier*, the Court must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a Constitutional right. *Id.* at 201.  The inquiry involves an objective reasonable test and is judged from the perspective of a reasonable officer on the scene. *See Kentucky v. Kind* 131 S.Ct. 1849, 1859 (2011); *Graham v. Connor*, 490 U.S. 386 (1989). Ultimately, the legal issue is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 397).  In this case, Deputy Daniel's actions violated Mr. Garcia's Constitutional right to be free from excessive force under the Fourth Amendment. *See Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

As the facts of this case show, Defendant's actions were not those of a reasonable officer and the force used to bring Mr. Garcia to the ground was excessive under the circumstances.  In *Graham*, the Court presented several factors that help guide an analysis of the objective reasonable standard, such as: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest." *Graham*, 490 U.S. 386, 396.  Under all three factors, Defendant's actions were unreasonable given the circumstances at the scene, as he knew them to be.  Mr. Garcia was not engaged in any criminal activity at the time.  While two members of his party were scuffling with deputies, Mr. Garcia appeared to be calmly standing in front of an officer and his K-9 with his hands raised in a submissive position.  Defendant claims that Mr. Garcia posed an immediate threat to the safety of officers at the scene, but that claim is without merit.  Mr. Garcia's raised hands and mostly

5

static position would not allow for a reasonable officer at the scene to conclude that Mr. Garcia posed an immediate threat. The behavior of the K-9 directly in front of Mr. Garcia and the relatively calm presence of Officer Sullivan further demonstrate that Mr. Garcia was not a threat. Finally, Mr. Garcia was not resisting arrest. Defendant points to the fact that Office Sullivan told Defendant that Mr. Garcia "had to go." Defendant took this as an instruction to place Mr. Garcia under arrest. At no point, however, did any officer attempt to place Mr. Garcia under arrest. The resulting reasonable objective inquiry can only lead to the conclusion that Defendant's use of force against Mr. Garcia was excessive and was not reasonable under the circumstances.

Having established that the first prong of *Saucier* is satisfied, the Court must turn to the second prong to determine whether Mr. Garcia's Constitutional right was clearly established at the time of the violation. As discussed, the Court must determine whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances. *Graham* at 202. Put differently, a "police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). The Court's inquiry is fact-specific and must be analyzed on a case-by-case basis.

In analyzing facts, as Defendant understood them to be at the time, it is clear that no reasonable officer would have felt Defendant's actions were lawful. Prior to arriving at the scene, Defendant heard a rustling over the radio, which alerted him to a possible struggle between at least one officer and other persons. Immediately upon arriving at the scene, Defendant also witnessed two officers actively engaged in a struggle with two females from the Garcia party, and Officer Sullivan shouted something to the effect of "he's got to go," referring to Mr. Garcia. Under these circumstances, Defendant could be justifiably concerned. Upon

6

surveying the scene, however, it should have been immediately clear to Defendant that Mr. Garcia posed no threat to any officers or other persons present at the scene.

As previously stated, Mr. Garcia stood in front of Officer Sullivan with his hands submissively raised. He did not make any sudden moves towards or even away from the officer, and Officer Sullivan's police dog was sitting and did not seem alarmed. As Defendant was aware, Officer Sullivan's police dog was trained to attack anyone threatening its handler and Officer Sullivan had been trained to put the dog between him and a potential threat. There was no action taken by Mr. Garcia that would give Defendant reason to believe Mr. Garcia was a threat.

As further evidence of the unreasonableness of Defendant's action, a third officer, Deputy Kevin Weare, indicated he did not and would not have taken the same course of action as Defendant. Deputy Weare arrived at the scene only moments after Defendant and testified that he too jumped out of his car to approach Mr. Garcia. Unlike Defendant, Deputy Weare intended to identify himself and verbally direct Mr. Garcia to the ground. According to his own account, there was no need for more aggressive action. In direct contrast, Defendant offered no verbal warning to Mr. Garcia before delivering the elbow strike.

Finally, Defendant's actions were unreasonable due to the divergence between his actions and what his training should have taught him. Defendant was trained in the use of force continuum, which offers a scale whereby appropriate types of force coincide with the corresponding behavior of the individual confronting the officer. As part of his training, Defendant was taught that strikes to the head and spine, described as the "red zone," should be avoided where possible. Strikes to this area can result in great bodily injury or even death. Defendant claims that he was not aiming for Mr. Garcia's head, but was instead aiming for his

7

spine.  Even if true, the force used and the location where the blow was directed were unreasonable given the behavior of Mr. Garcia at the time.

## V.    Conclusion

Law enforcement officers play a critical role protecting all members of a community and may be afforded qualified immunity in order to protect themselves from lawsuits brought against an officer acting reasonably.  In the case of Deputy Daniel, the actions taken were not those of a reasonable officer under the circumstances.  Mr. Garcia posed little or no threat to Officer Sullivan and the other officers at the scene.  Had Defendant conducted himself in the manner of a reasonable officer, he could have more appropriately matched the level of force used with the level of threat presented.  Instead, Defendant offered no warning before striking Mr. Garcia with his elbow, from behind, at full sprint speed, while Plaintiff stood with his hands raised at or above his head.  These are not the actions of a reasonable officer, particularly under the facts before the Court.

For the reasons stated in open court, for good cause shown, and for the reasons stated herein, it is hereby

ORDERED that Defendant Terry Daniel's Motion for Summary Judgment based on qualified immunity is DENIED.

An appropriate order will issue.


December 21, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge